UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JORGE A. RUBIO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 18-1201-JDT-cgc |
| | ) |
| TINA RABURN, ET AL., | ) |
| | ) |
| Defendants. | ) |

ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS*,
DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(g),
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On October 9, 2018, Plaintiff Jorge A. Rubio, an inmate at the Morgan County Correctional Complex in Wartburg, Tennessee, filed a *pro se* civil complaint on the form used for commencing actions pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff did not pay the civil filing fee or submit a motion to proceed *in forma pauperis*; however, he did submit a letter stating that he requested his trust account statement from prison officials on September 27, 2018, but had not yet received it. (ECF No. 2.) The complaint concerns events that occurred during Plaintiff's previous incarceration at the Whiteville Correctional Facility (WCF). The Clerk shall record the Defendants as Tina Raburn, a Registered Nurse; Angela Jones, a Registered Nurse and Health Services Administrator; Robert Trotter, a Shift Supervisor; and CoreCivic (formerly known as Corrections Corporation of America (CCA)), a private company that manages the WCF.

Under the Prison Litigation Reform Act, §§ 1915(a)-(b), a prisoner bringing a civil action must pay the full civil filing fee. The PLRA merely provides the prisoner the opportunity to make

a "downpayment" of a partial filing fee and pay the remainder in installments. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) ("[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. Prisoners are no longer entitled to a waiver of fees and costs."), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

However, not all indigent prisoners are entitled to take advantage of the installment payment provisions of § 1915(b). Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Thus, "[s]uch a litigant cannot use the period payment benefits of § 1915(b). Instead, he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002). The Sixth Circuit has upheld the constitutionality of this provision. *Wilson v. Yaklich*, 148 F.3d 596, 602-06 (6th Cir. 1998).

Plaintiff has filed three previous civil actions in federal court that were dismissed for failure to state a claim or as frivolous.[1] Therefore, he may not file any further action in which he proceeds *in forma pauperis* unless he first demonstrates that he is under imminent danger of serious physical injury. The assessment of whether a prisoner is in imminent danger is made at the time of the filing of the complaint. *See, e.g., Vandiver v. Vasbinder*, 416 F. App'x 560, 561-62 (6th Cir. 2011);

---

[1] *See Rubio v. Gray, et al,*, No. 13-1298-JDT-egb (W.D. Tenn. Jan. 2, 2014) (dismissed for failure to state a claim); *Rubio v. Powell*, No. 12-1226-JDT-egb (W.D. Tenn. Jan. 24, 2013) (dismissed for failure to state a claim); and *Rubio v. McElroy*, No. 09-0019 (M.D. Tenn. June 19, 2009) (dismissed for failure to state a claim).

*Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008); *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312-16 (3d Cir. 2001) (en banc).

Plaintiff alleges that on May 13, 2015, he was taken to the WCF infirmary for a tuberculosis (TB) shot, but he refused the shot and was placed in segregation until May 22, 2015. (ECF No. 1 at PageID 8.) On May 28, 2015, Plaintiff was escorted to the infirmary again by Defendant Shift Supervisor Trotter, where Defendant Nurse Raburn told Plaintiff to submit to a TB shot. (*Id.* at PageID 9.) Plaintiff alleges he explained to Raburn that he did not take TB shots because he had been diagnosed with TB in the past but was put on medication and cured. Ever since then, in lieu of the shots, his chest had been x-rayed. (*Id.*) Raburn allegedly told Plaintiff they did not do x-rays because they did not have a doctor and that if he refused the shot she would have him put back in segregation. (*Id.* at PageID 9-10.) When Plaintiff asked Raburn to search his file, which would prove he should not be given the shot, Raburn allegedly refused and continued to threaten to have him put in segregation. (*Id.* at PageID 10.) Raburn allegedly told Trotter that Plaintiff could not be in the general population if he did not take the shot because he might have TB and could spread the disease; therefore, she wanted Plaintiff "locked up in segregation right now." (*Id.* at PageID 11.) Under the alleged threats of segregation by Trotter and Raburn, Plaintiff allowed Raburn to give him the TB shot. (*Id.*)

Plaintiff further alleges that on June 4, 2015, Nurse Martin, who is not a party, called him to the infirmary to check his arm because Raburn had refused to do so. (*Id.* at PageID 12.) Nurse Martin allegedly told Plaintiff the swelling and infection in his arm was the result of the TB shot, and he was treated for ten days. (*Id.* at PageID 12, 13.) Nurse Martin also pulled Plaintiff's file and read that he had a positive TB test in 2010 but had been treated and cured; therefore, he should not be given a TB shot but should only be screened. (*Id.*) Nurse Martin allegedly told Plaintiff

3

that if Defendant Raburn had checked his file she would have known he should not be given TB shots. (*Id.* at PageID 13.) Nurse Martin updated his file with a medical order that stated he should not be given TB shots but should only be screened. (*Id.*)

Plaintiff alleges that on October 28, 2015, he filed a state-court complaint for negligence in Chancery Court.[2] (*Id.* at PageID 13-14.) In April 2016, Defendant Trotter allegedly sent him contaminated milk in retaliation for filing the state-court action, which made Plaintiff sick. (*Id.* at PageID 15, 26-27.) In May 2016, the Chancery Court transferred the action to the Circuit Court for Hardeman County, Tennessee, where it deemed jurisdiction was proper. (*Id.* at PageID 16-17.) The Circuit Court granted the defendants' motion for judgment on the pleadings on June 20, 2016, and Plaintiff appealed. (*Id.* at PageID 18.) However, the Tennessee Court of Appeals issued an order for Plaintiff to show cause why the appeal should not be dismissed because the filing fees in two prior appeals had not yet been fully paid. (*Id.* at PageID 19.) Plaintiff responded, but the Tennessee Court of Appeals held his appeal in abeyance pending a decision by the Tennessee Supreme Court in a similar case. (*Id.* at PageID 20.) After the Tennessee Supreme Court's decision in the other matter,[3] the Tennessee Court of Appeals relied on that decision to dismiss

---

[2] Plaintiff does not specify the individuals and/or entities who were named as defendants in that state court action, but exhibits attached to the complaint indicate that one of them was CCA, now CoreCivic. (*See* ECF No. 1-1 at PageID 2-3.)

[3] Plaintiff does not provide a citation for the opinion by the Tennessee Supreme Court, but it likely was *Hughes v. Tenn. Bd. of Probation and Parole*, 514 S.W.3d 707 (Tenn. 2017). In *Hughes*, the Tennessee Supreme Court rejected an as-applied challenge to Tenn. Code Ann. § 41-21-812. The statute provides that a court clerk may not accept for filing a claim by an inmate until any court "fees, taxes, costs and other expenses" previously assessed against that inmate are paid in full. § 41-21-812(a). However, notwithstanding any unpaid costs or expenses, a court may allow a claim by an inmate "for injunctive relief seeking to enjoin an act or failure to act that creates a substantial threat of irreparable injury or serious physical harm to the inmate." § 41-21-812(b).

Plaintiff's appeal on June 9, 2017; permission to appeal was denied by the Tennessee Supreme Court on October 6, 2017. (*Id.* at PageID 21.)

In this Court, Plaintiff is also asserting negligence and gross negligence claims arising out of the injuries he allegedly suffered as a result of being given a TB shot. (*Id.* at PageID 21-25.) Although Plaintiff did not attach a copy of his state-court complaint to his pleading in this case, the Court surmises that these negligence and gross negligence claims are the same or similar to those raised in state court. Plaintiff further asserts in this case an Eighth Amendment claim for lack of adequate medical care arising out of the TB shot, (*id.* at PageID 25), and a First Amendment retaliation claim based on the allegedly contaminated milk, (*id.* at PageID 26-27).

Plaintiff alleges that the Defendants' actions in giving or allowing him to be given the TB shot and in failing to prevent his being given the shot caused him to suffer "physical and emotional pain and injury . . . leaving him under imminent danger of serious physical injury." (*Id.* at PageID 26.) Similarly, Plaintiff alleges that "he is very ill and sickend [sic] by the contaminated milk, leaving him under imminent danger of serious physical injury." (*Id.* at PageID 27.) However, notwithstanding Plaintiff's recitation of the language in 28 U.S.C. § 1915(g), the Court concludes his allegations fail to satisfy the imminent danger exception in the statute. He has not sufficiently explained how a TB shot that caused swelling and infection in his arm in 2015 or an illness caused by drinking contaminated milk in 2016 could still be imminent, ongoing threats of serious physical injury on October 4, 2018, when he signed the present complaint. The additional allegation that Plaintiff suffered from "severe bouts of fear, anguish and chronic depression," (*id.* at PageID 26), even if those problems are continuing, is also insufficient to satisfy the exception because he has failed to allege how those mental problems create an imminent danger of *physical* injury.

The complaint in this case does not come within the exception to 28 U.S.C. § 1915(g); [4] therefore, the Court cannot address its merits unless Plaintiff first tenders the civil filing fee. Accordingly, leave to proceed *in forma pauperis* is DENIED pursuant to 28 U.S.C. § 1915(g). This action is DISMISSED without prejudice. Plaintiff may, within twenty-eight (28) days after the entry of judgment, re-open the case by filing a motion to re-open accompanied by full payment of the $400 civil filing fee.

The Court hereby CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a), that an appeal by Plaintiff in this case would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[4] Even if the Court were to find that Plaintiff's allegations satisfy § 1915(g), it appears that at least a portion of the complaint is time-barred. In Tennessee, the statute of limitations applicable to both negligence claims under state law and claims brought pursuant to 42 U.S.C. § 1983 is the one-year period in Tennessee Code Annotated § 28-3-104(a)(1). *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The injuries on which Plaintiff's state-law negligence claims and his Eighth Amendment claims are based occurred in May and June 2015. Even though Plaintiff does not specify the date on which the TDOC Commissioner denied his grievance concerning the TB shot, it almost certainly was more than one year before the present complaint was filed. The filing of a state-court case involving the same and/or related claims, which were then dismissed on the merits by the trial court, did not further toll the statute of limitations in this case. It is also likely that some or all of Plaintiff's claims could be barred by the doctrines of res judicata and collateral estoppel.